IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| United States of America<br><br>v.<br><br>Dequadry Kendrick Razor,<br><br>Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 7:22-cr-00842-JDA-1<br><br>**OPINION AND ORDER** |

This matter is before the Court on Petitioner Dequadry Razor's ("Petitioner's") motion to vacate under 28 U.S.C. § 2255 (the "Original Motion") [Doc. 606] and his motion to amend the motion to vacate under § 2255 [Doc. 618] (the "Amended Motion"). In response, the Government filed a motion to dismiss Petitioner's Original Motion as untimely as a matter of law [Doc. 609] and a motion to dismiss, or in the alternative, to deny both the Original and Amended Motions [Doc. 622]. The Court issued *Roseboro* Orders with respect to both motions. [Docs. 612, 623.] Petitioner filed responses to the Government's motion to dismiss the Original Motion [Doc. 614] and to the Government's motions to dismiss both the Original and Amended motions [Doc. 628]. Having carefully considered the motions, the responses, the record, and the applicable law, the Court grants the Government's motions to dismiss and denies Petitioner relief under § 2255.

**I. Background**

On March 14, 2023, Petitioner was charged as one of seven defendants named in a 13-count Third Superseding Indictment filed in the United States District Court for the District of South Carolina. [Doc. 215.] Petitioner was charged with the following offenses:

(1) conspiracy to possess with intent to distribute ("PWID") marijuana from around January 2020 through the date of the indictment, 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846 (Count 4); (2) discharging a firearm during a drug trafficking crime (to wit: the conspiracy offense alleged in Count 4) on or about January 25, 2022, 18 U.S.C. § 924(c)(1)(A)(iii) (Count 5); (3) PWID marijuana on or about January 25, 2022, 21 U.S.C. § 841(a)(1), (b)(l)(D) (Count 6); (4) possession of a firearm in furtherance of a drug trafficking crime (to wit: the PWID marijuana offense alleged in Count 6) on or about January 25, 2022, 18 U.S.C. § 924(c)(1)(A)(i) (Count 7); (5) conspiracy to commit Hobbs Act robbery on or about January 25, 2022, *id.* § 1951(a) (Count 8); and (6) attempted Hobbs Act robbery on or about January 25, 2022, and aiding and abetting the same (Count 9), *id.* §§ 1951(a) and 2.[1] [Doc. 215 at 3-6.]

On April 3, 2023, Petitioner, represented by his attorney, Alexander Stalvey ("Stalvey"), pleaded guilty, pursuant to a plea agreement, to Counts 4, 5, 7, 8, and 9 of the Third Superseding Indictment before the Honorable Henry M. Herlong, Jr. Notably, in the plea agreement, the Government agreed as follows: "The United States further agrees not to indict the Defendant for violations of 18 U.S.C. § 1951, 18 U.S.C. § 924(c), and 21 U.S.C. § 841(a) that the Government believes occurred in connection with two additional robberies on December 21, 2021, and January 12, 2022." [Doc. 246 at 6.] At his guilty plea hearing, Petitioner acknowledged he had sufficient time to discuss the pending charges with Stalvey and was satisfied with Stalvey's representation. Petitioner acknowledged he understood the elements of each of the offenses to which he was

[1] For ease of reference, the Court will refer to these charges as part of Petitioner's "Airport Case."

pleading guilty and further acknowledged he understood the penalties for these offenses. Petitioner averred that no one threatened, coerced, or forced him to plead guilty, and Petitioner acknowledged he was pleading guilty because he was in fact guilty of the offenses. Petitioner responded affirmatively when asked if he understood the provisions of the plea agreement and indicated he thoroughly discussed these provisions with Stalvey.

Petitioner also agreed with the accuracy of the facts the Government indicated it would prove if Petitioner's case went to trial. Specifically, the Government indicated its evidence would show Petitioner agreed with others to traffic marijuana as well as to rob individuals who were transporting marijuana through the Greenville-Spartanburg International Airport ("GSP airport"). The Government further indicated that on January 25, 2022, Petitioner traveled with a coconspirator from Columbia to the GSP airport where they observed some of the marijuana traffickers exit the airport terminal, enter into a vehicle that was waiting for them, and then proceed to the airport parking garage. At that time, Petitioner and his coconspirator attempted to rob the marijuana traffickers. During the attempted robbery, Petitioner discharged his firearm. Later that day, law enforcement officers conducted a search of Petitioner's residence, wherein they recovered marijuana from Petitioner's bedroom as well as a firearm.

Prior to sentencing, the Probation Office prepared a presentence investigation report ("PSR"). The PSR describes in detail how Petitioner and Kendrick Corbin ("Corbin") followed some individuals into the GSP airport parking garage after these individuals had placed two suitcases containing marijuana inside the trunk of a vehicle. Petitioner and Corbin attempted to rob these individuals of the marijuana at which time Petitioner and

Corbin began shooting. During the exchange of gunfire, Tyre Smith ("Smith") suffered a single gunshot wound to his buttocks that required a life-saving procedure (colostomy). [Doc. 350 at 16.]

The PSR also indicates Petitioner's sentencing range was 231-243 months. [*Id.* Doc. 350 at 24.] In arriving at this range, the PSR grouped Counts 4, 8, and 9 under USSG § 3D1.2(c). The Hobbs Act robbery counts resulted in the highest offense level for the group (24), which included a base offense level 20, USSG § 2B3.1(a), a 6-level enhancement because Smith suffered from a permanent or life-threatening bodily injury, *id.* § 2B3.1(b)(3)(C), a 1-level enhancement because Petitioner was attempting to take a controlled substance, *id.* § 2B3.1(b)(6), and a 3-level reduction for acceptance of responsibility, *id.* § 3E1.1. An offense level 24 coupled with a criminal history category of I produced a sentencing range of 51-63 months. Pursuant to USSG § 5G1.2(a), the sentences for Counts 5 (120 months) and Count 7 (60 months) were required to be imposed consecutively to the 51-63 month sentencing range. This requirement produced the combined applicable sentencing range of 231-243 months.[2] [Doc. 350 at 19-21, 24.]

On September 19, 2023, Petitioner was sentenced in the Airport Case to a total term of 240 months' imprisonment, consisting of 60 months concurrent as to Counts 4, 8, and 9; 120 months consecutive as to Count 5; and 60 months consecutive as to Count 7. [Doc. 419.] Judgment was entered on September 22, 2023. [*Id.*]

[2] In an objection to the PSR, Petitioner objected to the 6-level enhancement on the basis that Smith's injury involved a serious bodily injury instead of a permanent or life-threatening bodily injury. Petitioner later withdrew this objection and all other objections to the PSR. Accordingly, Judge Herlong adopted the factual findings and Guidelines calculations as set forth in the PSR.

On October 14, 2025, a federal grand jury indicted Petitioner and several others with numerous offenses related to a RICO conspiracy. The indictment charges Petitioner in four counts: (1) conspiracy to participate in a racketeering enterprise from around June 2020 through the date of the indictment, 18 U.S.C. § 1962(d); (2) VICAR attempt to murder on or about September 3, 2021, and aiding and abetting the same, *id.* §§ 1959(a)(5) and 2; (3) discharging a firearm during and in relation to a crime of violence on or about September 3, 2021, and aiding and abetting the same, *id.* §§ 924(c)(1)(A)(i)-(iii) and 2; and (4) VICAR conspiracy to murder between September 2021 and October 2021, and aiding and abetting the same, *id.* §§ 1959(a)(5) and 2. [*United States v. Chapman*, No. 7:25-cr-01187-JDA, Doc. 2 at 1-15.] The indictment alleges numerous overt acts including that Petitioner was involved in a robbery on January 12, 2022, and was involved in the January 25, 2022, attempted robbery to which he pleaded guilty.[3] [*Id.* at 11-12.]

Petitioner now seeks relief under § 2255. He filed the Original Motion on May 26, 2026, and the Amended Motion on August 27, 2026. These motions were filed more than two and a half years after the judgment in the Airport Case became final. Liberally construing the Original Motion, the Amended Motion, and Petitioner's responses to the Government's motions, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed *pro se* is 'to be liberally construed'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), Petitioner presses a claim of ineffective assistance of counsel as to Stalvey, a prosecutorial misconduct claim, and a claim under *United States v. Taylor*, 596

---

[3] For ease of reference, the Court will refer to these pending charges as part of Petitioner's "RICO Case."

U.S. 845, 860 (2022) (holding attempted Hobbs Act robbery is not a crime of violence under § 924(c)).

**II. Legal Standard**

A prisoner in federal custody may attack the validity of his sentence by filing a motion in the court that imposed the sentence. 28 U.S.C. § 2255(a). Four grounds exist upon which relief may be granted under § 2255: (1) where the sentence was imposed in violation of the Constitution or laws of the United States; (2) where the court lacked jurisdiction to impose such sentence; (3) where the sentence was in excess of the maximum authorized by law; and (4) where the sentence is otherwise subject to collateral attack. *Id.* The burden of showing a substantial constitutional deprivation rests upon the petitioner. *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938).

Irrespective of the grounds raised, all § 2255 claims are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). Under § 2255(f), this one-year limitation runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. *Id.*

In appropriate cases, the Supreme Court has determined that the time limit for the filing of a habeas corpus petition is subject to equitable tolling. *Holland v. Florida*, 560

U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Additionally, equitable tolling is limited to "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Whether a circumstance warrants equitable tolling is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50.

Additionally, the miscarriage-of-justice exception allows a district court to consider the merits of an otherwise time-barred claim if the petitioner is "actually innocent" of the crime of conviction. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."). To establish actual innocence, the petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

When a prisoner files a § 2255 motion, the district court must hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A claim thus demands a hearing only if the files and records leave room for relief." *United States v. Flood*, 188 F.4th 250, 257 (4th Cir. 2026). Because § 2255(b) sets forth what the district court may examine ("the files and records of the case"), the district court cannot "consider information outside

the record before it, including speculation about what might later be added to it." *Id.* at 258.

Rule 4 of the Rules Governing Section 2255 Proceedings requires a district court to conduct a preliminary review of a § 2255 motion. If, after "promptly examin[ing]" the motion, "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b). The Rule 4(b) standard is similar to the standard a district court must apply when evaluating in a civil case a motion to dismiss for failure to state a claim. *Cf.* Fed. R. Civ. P. 12(b)(6) (permitting dismissal where the pleading fails to state a claim on which relief can be granted). Accordingly, when initially tackling a § 2255 motion, the district court asks whether the motion's allegations, if taken as true, entitle the petitioner to relief. *See United States v. Paylor*, 88 F.4th 553, 565 (4th Cir. 2023) (analogizing hearing-free denial of § 2255 motion to Rule 12(b)(6) dismissal); *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. 1990) (Table) ("We agree that a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition.").

**A. Petitioner's Ineffective Assistance of Counsel Claim is Both Time-Barred and Without Merit**

Petitioner presses a claim of ineffective assistance of counsel based on representations made to him by Stalvey. [Doc. 606 at 1.] Petitioner claims he engaged in a proffer session with the Government related to the Aiport Case with the understanding that he would not later be charged with robberies that took place on December 21, 2021, and January 12, 2022. [*Id.*] Petitioner now claims he has been indicted on new charges in the RICO Case based on information from the Airport Case which he believed could

not be used against him. [*Id.*] Petitioner adds he would have taken his chances at trial if he had known the Government was going to use his proffer against him although Stalvey assured him it would not be later used. [*Id.*]

At the outset, the Court agrees with the Government that the one-year statute of limitations bars Petitioner's ineffective assistance of counsel claim. *See Walker v. United States*, 827 F. Supp. 3d 709, 715 (D.S.C. 2026) (applying § 2255(f)(1) to petitioner's ineffective assistance of counsel claim); *cf. United States v. Kelly*, Nos. 3:13cv276, 3:97-cr-00333-MOC, 2013 WL 3201334, at *1 (W.D.N.C. June 24, 2013) ("As discussed in previous Orders, while *Kastigar*[*v.United States*, 406 U.S. 441 (1972)] and perhaps *Santobello v. New York*, 404 U.S. 257 (1971) provide a mechanism for determining whether a plea agreement or non-attribution agreement has been breached, those remedies are also time barred as they are subject to the AEDPA time limits, just as any Section 2255 motion, because the motion attacks the judgment."). Petitioner never appealed the judgment filed on September 22, 2023, and so his convictions became final 14 days later. *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of . . . entry of . . . the judgment[.]"). Accordingly, Petitioner had to file his ineffective assistance of counsel claim on or before October 6, 2023. *See United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023) ("Where, as here, a petitioner does not file a direct appeal, a conviction becomes final when the appeal period expires.").

Clearly, Petitioner's ineffective assistance of counsel claim is untimely under § 2255(f)(1). Additionally, he presents no facts supporting an argument that this claim is timely pursuant to § 2255(f)(2), (3), or (4), and he fails to offer any facts to establish the

rare exceptional circumstances to justify equitable tolling of this claim. Indeed, Petitioner has not alleged or shown that the Government engaged in any wrongful conduct that precluded him from filing a § 2255 motion, nor that any "extraordinary circumstances" beyond his control prevented him from raising his ineffective assistance of counsel claim within the statute of limitations. *Harris*, 209 F.3d at 330.

In any case, even liberally construing his motions and responses, Petitioner does not set forth a viable ineffective assistance of counsel claim. Petitioner does not claim Stalvey knew the Government intended to file future RICO-related charges against him and those charges would include, as predicate acts, some of the things he was admitting to in his proffer. Essentially, Petitioner is saying that Stalvey was ineffective in failing to anticipate the subsequent RICO Case and to explain the possible ramifications to him.

A petitioner may properly assert a § 2255 claim alleging that his counsel provided constitutionally ineffective assistance. U.S. Const. amend. VI; *Massaro v. United States*, 538 U.S. 500, 504 (2003). The right to effective assistance of counsel includes the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012).

"To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'" *United States v. Cooper*, 617 F.3d 307, 312 (4th Cir. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). To satisfy the first *Strickland* prong, a petitioner must demonstrate that their attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in

"relatively rare situations" will a § 2255 motion establish that "'the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). That presumption requires a district court "not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (cleaned up). In other words, as it is all too easy to challenge an act, omission, or strategy once it has been proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish the second *Strickland* prong, a petitioner must "affirmatively prove prejudice" by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To establish prejudice in the context of a guilty plea, a petitioner must show that "'there is a reasonable probability that, but for counsel's errors,' [he] 'would not have pleaded guilty and would have insisted on going to trial.'" *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In evaluating claims under § 2255, statements made by a petitioner under oath at a guilty plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Indeed, "courts must be able to rely on the defendant's statements made under oath

during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Thus, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22.

In this case, Petitioner has not set forth facts demonstrating Stalvey's conduct fell below an objective standard of reasonableness. Indeed, Stalvey cannot be faulted with failing to anticipate the RICO Case that was filed two and a half years after the filing of the Airport Case. *See United States v. Tuakalau*, 562 F. App'x 604, 608-09 (10th Cir. 2014) (noting trial counsel's performance did not fall below an objective standard of reasonableness where he did not anticipate subsequent RICO prosecution when negotiating the petitioner's plea agreement). Instead, Stalvey negotiated a favorable plea agreement with the Government. While Petitioner pleaded guilty to five of the six charged counts, for its part, the Government agreed not to pursue § 924(c) charges related to two robberies it believed involved Petitioner. Such charges, if proven, increased Petitioner's sentencing exposure considerably. By substantially reducing Petitioner's sentencing exposure, Stalvey's conduct easily falls within the bounds of reasonable professional assistance. *See, e.g.*, *United States v. Garcia*, 413 F. App'x 57, 60 (10th Cir. 2011) (concluding counsel's performance was not deficient where counsel negotiated favorable plea agreement); *cf. Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (noting for claims asserting deficient performance in plea negotiations, the prejudice prong requires a

defendant to prove that "the outcome of the plea process would have been different with competent advice").

Except through implausible allegations, Petitioner does not plead facts showing any reasonable probability that he would have rejected the plea without Stalvey's advice and proceeded to trial. *Meyer*, 506 F.3d at 369. Additionally, Petitioner admitted to being guilty to the five offenses to which he pleaded guilty. While not determinative, Petitioner's guilt of the crimes charged certainly makes any claim now that he would have rejected the plea agreement and proceeded to trial less reasonable.

Moreover, at Petitioner's guilty plea hearing, Petitioner testified he: (1) had sufficient time to discuss the pending charges with Stalvey; (2) was satisfied with Stalvey's representation; (3) understood the elements of each of the offenses to which he was pleading guilty; (4) understood the penalties for the five offenses; (5) was pleading guilty because he was in fact guilty of the offenses; and (6) understood the provisions of the plea agreement and discussed them with Stalvey. Petitioner also testified that no one threatened, coerced, or forced him to plead guilty and that the Government's summary of the facts it would prove at trial was accurate.

Notably, Petitioner's allegations concerning Stalvey's conduct contradict his testimony during the plea colloquy. *Lemaster*, 403 F.3d at 221-22. Consequently, the contrary allegations in Petitioner's § 2255 motions and responses are subject to summary dismissal as "'palpably incredible,'" *Blackledge*, 431 U.S. at 76 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)), and "'patently frivolous or false,'" *id.* (quoting *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 119 (1956)).

For these reasons, Petitioner's ineffective assistance of counsel claim must be dismissed.[4]

**B. Petitioner's Prosecutorial Misconduct Claim is Without Merit**

Petitioner also claims the Government engaged in prosecutorial misconduct when it brought the RICO Case based on information Petitioner claims he provided in his proffer in the Airport Case. Petitioner claims he did not realize the nature of this claim until he received discovery in the RICO Case. Petitioner says had he known the Government was going to use the information he provided in his proffer in bringing the RICO Case and had he received the undisclosed discovery, he would not have pleaded guilty and would have insisted on going to trial.

The Court gives Petitioner the benefit of the doubt that the one-year statute of limitations began to run when he received the discovery to which he refers. *See* 28 U.S.C. § 2255(f)(4) (providing the one-year statute of limitations runs from the date on which the facts supporting the claim could have been discovered through the exercise of due

---

[4] Petitioner states that as part of the discovery he received in the RICO Case, he learned for the first time that Corbin admitted to shooting Smith during the attempted GSP airport robbery on January 25, 2022. Petitioner claims this new information concerning Smith would have negated the application of the 6-level enhancement under § 2B3.1(b)(3)(C) for the permanent or life-threatening bodily injury sustained by Smith during the exchange of gunfire and Stalvey was constitutionally ineffective for not continuing to press the objection to the enhancement. Petitioner is mistaken. Unquestionably, the shooting of Smith was within the scope of the jointly undertaken robbery, in furtherance of it, and foreseeable. *See United States v. Patton*, 927 F.3d 1087, 1094-97 (10th Cir. 2019) (noting armed robberies carry with them the inherent prospect that someone may be injured, and thus violence against a victim or police officer is within the scope of an armed robbery, in furtherance of it, and foreseeable, and can constitute "relevant conduct" at sentencing; and upholding 6-level § 2B3.1(b)(3)(C) enhancement). Because the shooting of Smith qualified as Petitioner's relevant conduct, Stalvey had no plausible basis in which to challenge the application of the enhancement given Smith's injury. Thus, Stalvey's performance was not deficient and Petitioner suffered no prejudice.

diligence). Nevertheless, even though the Court charitably considers this claim as timely, Petitioner cannot show the Government engaged in prosecutorial misconduct.

To succeed on a prosecutorial misconduct claim, Petitioner must demonstrate that the Government's conduct was improper and that the improper conduct prejudicially affected his substantial rights. *United States v. Caro*, 597 F.3d 608, 624-25 (4th Cir. 2010). The relevant inquiry is whether the Government's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Petitioner has not set forth facts meeting his burden. First, since Petitioner received a sentence within the Guidelines range for his offenses, offenses he has never claimed to be wrongly convicted of, it is difficult to conclude he experienced any prejudice from governmental conduct during the events leading up to his guilty plea and sentencing. Second, Petitioner received a substantial benefit by pleading guilty in that the Government agreed not to pursue two § 924(c) charges against Petitioner. Third, given the strength of the Government's evidence against Petitioner, it strains credulity to conclude Petitioner still would have insisted on going to trial. Fourth, the integration clause in Petitioner's plea agreement defeats any suggestion he entered the plea agreement in reliance upon oral promises outside the written agreement.[5] *See United*

---

[5] The integration clause in Petitioner's plea agreement provides as follows: "The parties hereby agree that this Plea Agreement contains the entire agreement of the parties; that this Agreement supersedes all prior promises, representations and statements of the parties; that this Agreement shall not be binding on any party until the Defendant tenders a plea of guilty to the court having jurisdiction over this matter; that this Agreement may be modified only in writing signed by all parties; and that any and all other promises,

*States v. Santisteban*, 501 F.3d 873, 880 (8th Cir. 2007) (concluding the Government provided due process by disclosing plea agreements that superseded proffer agreements); *United States v. Thornton*, 197 F.3d 241, 253 (7th Cir. 1999) (explaining that proffer letters are "of scant relevance at trial when a subsequent, superseding plea agreement has been reached"); *United States v. Fagge*, 101 F.3d 232, 234 (2d Cir. 1996) (concluding "[t]he plea agreement superseded the proffer agreement"); *see also United States v. Quesada*, 607 F.3d 1128, 1131-32 (6th Cir. 2010) (explaining that plea agreements supersede proffer agreements); *United States v. Davis*, 393 F.3d 540, 546 (5th Cir. 2004) (same). Indeed, the plea agreement, the contents of which Petitioner acknowledged he understood at his guilty plea hearing, discloses the existence and scope of the limitations placed on the Government. The Government agreed not to pursue specific offenses against Petitioner for conduct on specific dates, and the RICO Case does not include such charges against Petitioner (violations of § 1951, 18 U.S.C. § 924(c), and § 841(a) on the agreed-to dates). *Cf. United States v. Alegria*, 192 F.3d 179, 186 (1st Cir. 1999) ("[I]t is not reasonable for Alegria to seek the benefit of a prior oral representation by the [G]overnment after he signed a fully integrated writing that did not contain the claimed representation, and expressly affirmed to the district court in the change-of-plea colloquy that he had not been influenced by extrinsic representations of any kind."). Put simply, Petitioner has not identified any facts that would justify an objectively reasonable expectation that the plea agreement meant anything other than what it plainly says. Tellingly, Petitioner has not identified any terms in the plea agreement

---

representations, and statements, whether made prior to, contemporaneous with or after this Agreement, are null and void." [Doc. 246 at 10.]

breached by the indictment in the RICO Case. *Cf. United States v. Nguyen*, 608 F.3d 368, 373-74 (8th Cir. 2010) (holding the Government did not breach a plea agreement with the defendant in a Minnesota federal case where the plea agreement was silent on the question of additional charges and where the Government prosecuted the defendant federally in Iowa for a separate conspiracy). Petitioner's subjective and unrealistic understanding of the plea bargaining process and plea agreement does not change the fact that the plain and clear language of the plea agreement does not dispose of the offenses charged in the RICO Case. Since the Government has faithfully abided by the clear terms of the plea agreement, the Court has no reason to disturb the sentence imposed in this case based on prosecutorial misconduct.

For these reasons, Petitioner's prosecutorial misconduct claim must be dismissed.

**C. Petitioner's *Taylor* Claim is Both Time-Barred and Without Merit**

Turning to Petitioner's claim under the Supreme Court's decision in *Taylor*, the Court agrees with the Government that the one-year statute of limitations bars this claim under § 2255(f)(1). As noted above, Petitioner never appealed the judgment filed on September 22, 2023, and so his convictions became final 14 days later. Fed. R. App. P. 4(b)(1)(A). Accordingly, Petitioner had to file his *Taylor* claim on or before October 6, 2023. *Green*, 67 F.4th at 663. Because he waited until August 27, 2026, to raise this claim, Petitioner's *Taylor* claim is time-barred absent some mechanism to excuse the untimeliness.

Petitioner does not cite such a mechanism, and he does not press an equitable tolling argument with respect to this claim. He cannot avail himself of § 2255(f)(3) since he entered his guilty plea to Count 5 a full year after the date of the Supreme Court's

decision in *Taylor*. Thus, *Taylor* was the settled substantive law at the time of his sentencing. Moreover, Petitioner cannot avail himself of § 2255(f)(2) or (f)(4) since his *Taylor* claim does not rest on newly discovered evidence or a governmental impediment to raising the claim.

In any case, Petitioner's *Taylor* claim fails on the merits. Petitioner asks the Court to "vacate [C]ount 5 . . . in light of *United States v. Taylor*" because "the Supreme Court ruled in 2022 that attempted/conspiracy to commit Hobbs Act Robbery no longer qualifies as a crime of violence[.]" [Doc. 618 at 1.] Petitioner claims that it is "impossible" for Count 4 (conspiracy to PWID marijuana) to serve as the predicate for his Count 5 conviction (discharging a firearm during the drug trafficking crime alleged in Count 4) because (1) "a conspiracy is only '[t]he planning between 2 or more people to commit an unlawful activity' and you can't physically discharge a weapon in a conspiracy"; (2) "[C]ount 5 uses every element and predicate from the Jan. 25 Attempted Hobbs Act Robbery from [C]ount 9"; and (3) the only count to which he pleaded guilty that could serve as the predicate to Count 5 is Count 9 (attempted Hobbs Act robbery). [*Id.*]

Petitioner's *Taylor* argument is misguided for several reasons. First, Count 5 is predicated on Count 4 of the Third Superseding Indictment not Count 9. [Doc. 215 at 4.] To be sure, the indictment and the plea agreement tie the elements of Count 5 to a drug trafficking crime wherein a firearm was discharged. Count 9 neither alleges a drug trafficking crime nor the discharge of a firearm. Second, a firearm can be used and discharged during a drug conspiracy. *Cf. United States v. Chapman*, 851 F.3d 363, 375 (5th Cir. 2017) (noting federal drug conspiracy can serve as predicate drug trafficking crime for purposes of 924(c)). Third, just because Petitioner pleaded guilty to Count 9,

which encompassed the episode where Petitioner discharged the firearm, this fact does not bar Count 4 from serving as the predicate drug trafficking crime for Count 5.

For these reasons, Petitioner's *Taylor* claim must be dismissed.

**III. Conclusion**

In sum, because Petitioner has not set forth sufficient facts to support viable claims for relief under § 2255(a), his three claims must be denied. Accordingly, the Government's motions to dismiss [Docs. 609, 622] are **GRANTED**. Petitioner's Original Motion [Doc. 606] and Amended Motion [Doc. 618] are **DENIED**. It is further ordered that a certificate of appealability is denied as Petitioner has failed to make "a substantial showing of the denial of a constitutional right."[6] 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/ Jacquelyn D. Austin
United States District Judge

October 30, 2026
Greenville, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[6] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Petitioner has not made the requisite showing.